# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **A.H.**

**No. 17-0809** (Wayne County 17-JA-057)

**FILED**

**January 8, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father R.H., by counsel Kerry A. Nessel, appeals the Circuit Court of Wayne County's August 10, 2017, order terminating his parental rights to A.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Melia Atwell Adkins, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2017, the DHHR filed an abuse and neglect petition against petitioner and A.H.'s mother. The DHHR alleged that, at the child's birth, both the mother and the child tested positive for marijuana. The DHHR also alleged that petitioner had a history of drug abuse, including use of marijuana, opiates, and heroin. Petitioner ceased using drugs when he was released from prison in June of 2016, but relapsed six months later. Petitioner attempted to complete a substance abuse treatment program, but missed one day and was required to pay a fifty dollar fee in order to return. Petitioner decided not to pay the fee and opted to attempt to enter into a different program with the mother. The DHHR noted that petitioner was not able to parent safely due to his impulse to use drugs. Further, petitioner and the mother lived in a recreational vehicle ("RV") next to his mother's home. An extension cord connected to petitioner's mother's home provided electricity for the RV, but the parents had to go into her house to use the kitchen or bathroom and to obtain water. Petitioner also had a long history with Child Protective Services ("CPS") and the DHHR alleged that impending and present dangers

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

existed as a result of one or both caregivers' lack of parenting knowledge, skills, or motivation which affected child safety; that the caregivers' drug and/or alcohol abuse was pervasive and threatened child safety; and that one or both caregivers could not control their behavior. Later in May, petitioner and the mother waived their preliminary hearing.

The circuit court held an adjudicatory hearing in June of 2017. Petitioner was not present but was represented by counsel. According to petitioner's counsel, the mother, who was also absent, was attending a medical appointment and petitioner chose to drive her to the appointment. The circuit court denied the parents' motions to continue and heard evidence. The circuit court found that petitioner had not been in contact with the social worker since the preliminary hearing, failed to appear at a scheduled multidisciplinary team ("MDT") meeting, failed to obtain random drug screens, and did not participate in supervised visits with the child. Further, the circuit court found that there was clear and convincing evidence that the child was abused and neglected by the parents based upon their substance abuse issues, by the child being born addicted to drugs, and by the parents' failure to cooperate with the DHHR. Accordingly, the circuit court adjudicated petitioner as an abusing parent and rescinded supervised visits until he made an appearance before the circuit court and cooperated with the DHHR.

In August of 2017, the circuit court held a dispositional hearing. Petitioner requested a post-adjudicatory improvement period and testified that, despite testing positive for marijuana immediately prior to the hearing, he had not abused opiates in nearly a month. Petitioner testified that he was attempting to enter a detox program in order to address his substance abuse issues. When asked why he had not been in contact with the CPS worker, petitioner testified that he did not have her phone number and that he had attempted to contact an old CPS worker. Petitioner asserted that he would do whatever was requested of him. After hearing petitioner's testimony, the circuit court found that petitioner failed to cooperate with the DHHR, failed to stay in touch with his attorney, failed to stay in touch with the CPS worker, and failed to participate in drug screens. Further, the circuit court noted that petitioner and the mother prioritized a very minor elective medical procedure before attending the adjudicatory hearing and attempting to regain custody of the child. The circuit court also found that petitioner continued to abuse drugs. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse. The circuit court also found petitioner seemed to lack the desire to correct the conditions. Finding that the child needed stability and permanency, and that termination was necessary for her welfare, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and terminated his parental rights.[2] It is from this dispositional order dated August 10, 2017, that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[2]The mother's parental rights were also terminated in the proceedings below. The permanency plan for A.H. is adoption by her aunt.

2

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating his parental rights without first granting him an improvement period. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record establishes that petitioner failed to demonstrate his ability to fully participate in an improvement period. Throughout the underlying proceedings, petitioner failed to maintain contact with the DHHR and his attorney. He did not participate in random drug screens as ordered by the circuit court, nor did he visit with his child. Despite knowing the gravity of the circumstances, petitioner chose to drive the mother to a medical appointment regarding her carpal tunnel syndrome rather than attend his own adjudicatory hearing. Further, petitioner tested positive for marijuana at the dispositional hearing. While petitioner argues that he would successfully complete an improvement period if given the chance, his actions during the proceedings below show a complete lack of compliance with what was required of him. As such, petitioner did not demonstrate that he was likely to substantially comply with the terms or conditions of an improvement period.

Moreover, we find no error in the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical,

mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner would correct the conditions of abuse and neglect. Petitioner did not participate in any drug screens throughout the proceedings below and tested positive on the day of the dispositional hearing, despite knowing that his parental rights were at risk. Further, petitioner failed to even visit with the newborn child following the adjudicatory hearing. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Katie S.*, 198 W.Va. at 90, n.14, 479 S.E.2d at 600, n.14 (citing *Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Based on the evidence, it is clear that there was no reasonable likelihood that petitioner would correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. As mentioned, circuit courts are directed to terminate parental rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 10, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: January 8, 2018

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker